**UNITED STATES of America, Plaintiff,**

v.

**2,899.17 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUNTY, STATE OF FLORIDA, and Foley, Inc., of Melbourne et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**5,747.51 ACRES OF LAND, MORE OR LESS, Situate IN BREVARD COUNTY, STATE OF FLORIDA, and Robert W. Walters et al., Defendants.**

**Civ. Nos. 63–25, 63–95.**

United States District Court
M. D. Florida,
Orlando Division.

June 6, 1967.

each tract, but took less and specifically described that which it took. It described the amount taken in Tract No. 2811 as 428.36 acres; in Tract No. 3662 as 331.47 acres; in Tract No. 4005 as 876.53 acres and in Tract No. 4337 as 1466.66 acres.

The difference between the entire acreage in each tract and the acreage taken by the Government was submerged land lying beneath the Indian River, which is admitted to be navigable. The Government acquired the land beneath the navigable waters by special grant from the State of Florida through the Trustees of the Internal Improvement Fund to be used solely for the purposes set out in the special grant.

It is contended by the defendants that the submerged lands were included in the original patents from the United States to the State of Florida, and that such lands were then conveyed by the State through the Trustees of the Internal Improvement Fund, to private individuals, the predecessors in title of the present defendants, and that by virtue of such conveyances, they are the owners of the entire acreage in each tract.

It is also contended by the defendants that the State of Florida is estopped from denying the inclusion of the submerged lands in its deeds either under the principle of estoppel by deed or by equitable estoppel, and that the United States, by reason of the grant to it by the State of Florida, is in privity with said State and therefore, it too is estopped, and that the United States must compensate the defendants for the reasonable value of the entire acreage in each tract.

The legal question as to the extent of the property taken was submitted to the court at pretrial conference prior to the trial in which the reasonable value of the property taken was determined. Oral evidence was heard concerning the navigability of the water beneath the submerged land and the records concerning the transfer of the tracts were received in evidence by the court.

Francis G. Rearick, Title Attorney, Department of Justice, Robert M. McKee, and Anne S. Bell, Attys., Department of Justice, Washington, D. C., for plaintiff.

Toby Prince Brigham, Fuller Warren, James G. Pace, H. N. Boureau, Miami, Fla., J. Kenneth Ballinger, Tallahassee, Fla., Leonard Spielvogel, Merritt Island, Fla., for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

DUNCAN, Senior District Judge.

Pursuant to an Act of Congress, the United States condemned large quantities of land for a site for the construction, maintenance and operation of the Manned Lunar Landing Program of the National Aeronautics and Space Administration situated on Merrit Island in Brevard County, Florida.

Included in the taking were tracts Nos. 2811, 3662, 4005 and 4337. The entire acreage in Tract No. 2811 was 521.58 acres. The entire acreage in Tract No. 3662 was 523.30 acres. The entire acreage in Tract No. 4005 was 1029.54 acres. The entire acreage in Tract No. 4337 was 1519.44 acres.

In its Declaration of Taking the United States did not take the entire acreage in

It was understood at the close of the pretrial conference that additional specified documents might be supplied for the record, and that further briefs would be supplied. The record not having been completed before the case was submitted to the jury, the court, by agreement, required the jury to determine the value of the entire acreage in each tract, and also the value of the tracts described in the Declaration of Taking, the difference being the value of the submerged land. It was also understood that judgment would be entered for the proper amount following the court's determination of the legal questions.

The jury found the value of the submerged lands to be as follows:

| Tract | Area | Value |
|---|---|---|
| 2811 | 56.09 acres | $ 5,600.00 |
| 3662 | 192.13 acres | $19,200.00 |
| 4005 | 144.90 acres | $14,500.00 |
| 4337 | 52.78 acres | $ 5,300.00 |

■■■ The State of Florida was admitted to the Union by Act of Congress on March 3, 1845 (5 Stat. 742, 788, 789), and by virtue of its sovereignty, the State became the owner of all the lands under navigable waters within the State, including the shores or spaces, if any, between ordinary low-water mark and ordinary high-water mark, and all "tidelands" or lands covered and uncovered by the daily ebb and flow of normal tides. These lands under navigable waters to high-water mark and tidelands are generally designated as "sovereignty lands" since they belong to the State by virtue of its sovereignty. Martin v. Busch, 93 Fla. 535, 112 So. 274, 283 (Fla.S.Ct. 1927).

An Act of Congress dated September 28, 1850, entitled:

"An Act to enable the State of Arkansas and other States to reclaim the 'Swamp Lands' within their limits. * * *"

provided that all swamp and overflow lands made unfit thereby for cultivation within the State of Florida which remained unsold at the passage of the Act, should be granted to the State of Florida. Pursuant to this Act, Tract No. 2811 described as the N½ of the SW¼ of Section 6, and the NW¼ of the NW¼ of Section 7, Twp. 21S, Range 36E, owned by the Paypac Corporation, a corporation, and Tract No. 3662, described as the W¾ of Section 15, and the W½ of the NW¼ of Section 22, Twp. 22S, Range 36E, owned by Twenty-Two-Thirty-Six Corporation, James G. Pace, Foley, Inc., a corporation, and Cape Canaveral Discount Inc., a corporation, were granted by United States Patent No. 27 dated August 25, 1883, to the State of Florida.

According to the plat of survey of the United States approved April 30, 1860, Tract No. 2811 contained 528.51 acres, and the land in Tract No. 3662 contained 523.31 acres. In Tract No. 2811, the United States by specific description, condemned only 428.36 acres, and in Tract No. 3662 it condemned only 331.17 acres. The difference between the total acreage in each tract and the acreage condemned by the United States was sovereignty or submerged land, and was conveyed by the Trustees of the Internal Improvement Fund to the United States.

Tract No. 4005, title to which is claimed by the defendants Twenty-Two-Thirty-Six Corporation, a corporation, James G. Pace, Foley, Inc., of Melbourn, a corporation, and Cape Canaveral Discount Inc., a corporation, is described as the W½ of the SW¼ of the SW¼, and the East ½ of the SE¼ of the SW¼ of Section 22, Twp. 22S, Range 36E, and also Section 27, Twp. 22S, Range 36E, and Government Lots 1-4-5-7, and the SE¼ of Section 28, Twp. 22, Range 36, was, pursuant to the Act of Congress aforesaid, granted to the State of Florida by United States Patent No. 27 dated August 25, 1883, and Patent No. 62 dated December 12, 1891. According to the plat of survey of the United States approved April 30, 1860, it contained, as described above, 1007.29 acres.

Since the acquisition of the above lands claimed by the defendants, accretions have added thereto, 22.25 acres not covered by the original description in the

United States Patent, thus bringing the total acreage claimed by the defendants to 1029.54 acres. Of this tract the Government condemned by specific description, only 876.53 acres. The difference being the amount of submerged or sovereignty land which was obtained by the Government by conveyance from the Trustees of the Internal Improvement Fund of Florida.

Tract No. 4337, owned by Lake Butler Corporation, a corporation, James S. Foley, Trustee, and Paypac Corporation, a corporation, is described as Section 33 and the W½ of Section 34, Twp. 22S, Range 36E, also Government lots 1 and 2, and fractional Section 4, Twp. 23S, Range 36E, also Section 3, Twp. 23S, Range 36E, less and except the South 5880 feet of the East 2640 feet thereof, was, pursuant to the Act of Congress aforesaid, granted to the State of Florida by United States Patent No. 27 dated August 25, 1883, and Patent No. 62 dated December 12, 1891, respectively, and conveyed all of Sections 33, and the W½ of Section 34, Twp. 22, Range 36E, and Government Lots 1 and 2 of fractional Section 4, all of Section 3, Twp. 23S, Range 36E, except as hereinafter stated.

The N½ of the NE¼ and the SW¼ of the NE¼ of Section 3, Twp. 23, Range 36, were sold by the United States directly to the defendants' predecessors in title on April 24, 1923.

The SE¼ of Section 3, Twp. 23, Range 36, was sold directly by the United States to Kenneth Bragdon on March 11, 1915. According to the plat of survey of the United States approved April 30, 1860, it contained 1508.52 acres.

The lands conveyed directly by the United States to the individuals named aforesaid, were never submerged lands. Since the date the property was platted and described, accretions have added 10.92 acres thereto, making a total of 1519.44 acres. The United States condemned 1466.66 acres.

First, let us dispose of the question of what was conveyed to the State of Florida by the several patents from the United States pursuant to the Act of 1850. What did the Government have to grant?

On July 21, 1821, the United States took possession of all of the territories known by the name of "East and West Florida", and the adjacent islands that were ceded by Spain and afterwards incorporated into the territory of Florida. The laws of the United States became applicable, and the United States took and held all the lands above and below the navigable waters, including the shores or spaces between the ordinary high and low-water marks and tidelands, for the use and benefit of the state that was to be subsequently formed with rights of sovereignty. Such lands were not granted by the United States while Florida was a territory. Martin v. Busch, supra, 112 So. at p. 283, Broward v. Mabry, 58 Fla. 398, 50 So. 826, 829, 830 (Fla.S.Ct.1909), Apalachicola Land and Development Co. v. McRae, 86 Fla. 393, 98 So. 505, 525 (Fla.S.Ct.1923).

By its admission into the Union, the State, by virtue of its sovereignty, became the owner of all lands under the navigable waters within the state, including the shores or spaces, if any, between ordinary low-water mark and ordinary high-water mark, and also all tidelands, mainly lands covered and uncovered by the daily ebb and flow of normal tides, and the United States had no further right or title to such lands. Martin v. Busch, supra; Broward v. Mabry, supra; Apalachicola Land and Development Co. v. McRae, supra.

■ Navigable waters include lakes, rivers, bays, or harbors, and all waters capable of practical navigation for useful purposes, whether affected by tides or not, and whether the water is navigable or not, in all its parts towards the outside lines or elsewhere, or whether the waters are navigable during the entire year or not. Martin v. Busch, supra.

At the time of the Act of Admission there had been no survey of any of the lands; and tidal lands, submerged lands and swamp or overflow lands were mere definitions without specific locations or

areas. It was not until 1860 that a survey was completed, and that survey designated township and section and fractional section lines only within such areas. There was no designation on any plat showing submerged or swamp lands. Such lands were simply included in the survey in making up the entire acreage in the surveyed area, township, section, or subsection.

We do not understand that the survey of 1860 described or specifically located on the plats the submerged or sovereignty lands, which had become the property of the State, nor did it distinguish such lands from the lands owned by the United States. Without such a survey, it could not in its patent have described by metes and bounds, or otherwise, the overflow or swamp lands within the survey areas.

■ It is, therefore, our conclusion that in view of the fact that the United States had already, by the Act of Admission, ceded all submerged lands to the State, it had no further interests in such lands—it could not convey any more than it had already conveyed. We must therefore hold that the various patents granted to the State only that which the Government owned—swamp and overflow lands.

The United States Coast and Geodetic Survey dated October 6, 1906, shows that the submerged portion of the land described in each tract, as conveyed by the United States to the State of Florida, was, at the time of its conveyance, submerged and still is submerged land.

By two warranty deeds dated December 1, 1906, a deed dated November 20, 1911, and two deeds dated March 27, 1912, the Trustees of the Internal Improvement Fund of the State of Florida, conveyed to the Florida Coastline, Canal & Transportation Company, a corporation, lands in excess of 150,000 acres, in which were included the lands described in Tracts Nos. 2811, 3662, 4005 and 4337.

These deeds described the lands conveyed by section, township and range where a whole section was transferred, and where less than a section was trans-ferred, it was described as a "fractional section", and whether by section or fractional section, the number of acres was designated in accordance with the United States survey of 1860.

These facts, together with the fact that the defendants paid taxes on the tracts under the description in the Trustees' deeds, constitute the basis of defendants' claim to ownership of the submerged lands.

■ We have already determined that the United States did not convey to Florida submerged sovereignty lands which it did not own. It conveyed only that which it did own—swamp and overflow lands. It therefore follows that the United States did not give to Florida or to the Trustees of the Internal Improvement Fund the power to convey that which Florida owned. Such power was vested in the State of Florida by virtue of its sovereign ownership of the submerged lands and could only be exercised by Florida according to Florida law.

The legal right to convey swamp and overflow lands, which had been granted to the State pursuant to the Act of Congress of 1850, was conferred upon the Trustees of the Internal Improvement Fund by the Legislature of the State of Florida in 1855, but such right did not include the power to convey sovereignty lands.

The Legislature of the State of Florida did not confer on the Trustees of the Internal Improvement Fund the power to convey sovereignty lands until 1919 under Chapters 7861–7891. This was done at a time several years after the last conveyance from the Trustees to defendants' predecessor in title, the Florida Coastline, Canal & Transportation Company.

The defendants claim in their briefs that even if the Trustees of the Internal Improvement Fund did not have authority in 1906, 1911 and in 1912, to convey the submerged lands, under Florida case law, they are now estopped to deny the validity of the deeds conveying the tracts of land described above to the defendants' predecessor in title.

If, by mistake or otherwise, sales or conveyances are made by the Trustees of the Internal Improvement Fund of sovereignty lands, such as lands under navigable waters in the State of Florida, or tidelands, or if such Trustees make sales and conveyances of state school land as and for swamp and overflow land under authority given such Trustees to convey swamp and overflow land, such sales and conveyances are ineffectual for lack of authority from the State. Martin v. Busch, supra, 112 So. at p. 285, Broward v. Mabry, supra 50 So. at p. 831.

Where lands below high-water mark of navigable bodies of water are claimed, the right thereto should be specifically shown, since such ownership is exceptional. Martin v. Busch, supra 112 So. at p. 284, Brickell v. Trammel, 77 Fla. 544, 82 So. 221, 227 (Fla.S.Ct.1919), Apalachicola Land and Development Co. v. McRae, supra 98 So. at p. 517, and Williams v. Guthrie et al., 102 Fla. 1047, 137 So. 682, 685 (Fla.S.Ct.1931).

A grant in derogation of sovereignty must be strictly construed in favor of the sovereign. Trustees of Internal Improvement Fund of the State of Florida v. Claughton et al., 86 So.2d 775, 786 (Fla.S.Ct.1956).

It is interesting to note that the Trustees in conveying the property to the defendants' predecessor in title followed the description in the patent as to section, township and range, although at that time the extent and location of the submerged land or sovereignty land had been determined by the geodetic surveys of 1883 and 1906. There could have been no misunderstanding between any of the parties as to what was intended to be conveyed by the various deeds.

At the time of the granting of the land by the Government to the State, it knew the extent of its ownership. At the time the representatives of the State, the Trustees, conveyed the property to the transportation company, they knew the extent of their authority as a matter of law.

We are unable to find in any of the deeds any suggestion of the intention on the part of the Trustees to convey more than they had a legal right to convey, and the mere designation of the number of acres without specifically mentioning the submerged land included therein was not sufficient to meet the burden of the defendants in showing such intention. Stein v. Brown Properties, Inc., 104 So.2d 495 (Fla.S.Ct.1958).

On the contrary, we find in deed No. 15972 dated December 1, 1906, which conveyed 117,157.29 acres, what seems to be an expressed intention not to convey sovereignty lands. That deed provided:

"TO HAVE AND TO HOLD said lands, together with all the hereditaments and appurtenances thereto including all *riparian rights* thereunder unto said party of the second part, its successors and assigns to its and their own benefit and use forever." [Emphasis supplied.]

"A riparian owner is one who owns to the line of ordinary high-water mark of navigable waters." Martin v. Busch, 112 So. supra at p. 287.

"Riparian owners in this state usually have title to ordinary high-water mark of navigable waters; the lands below such mark belong to the state by virtue of its sovereignty, and are not held for private ownership purposes." Martin v. Busch, supra, 112 So. at p. 287.

Why did the Trustees say in this deed to 117,157.29 acres, that the transfer included, "all riparian rights" if it had been the intention of the Trustees to convey the submerged lands? If it had been the intention of the Trustees to convey the submerged lands, there would have been no reason for the granting of riparian rights, because riparian rights are granted only where the transfer does not include ownership of submerged lands. Hayes v. Bowman, 91 So. 2d 795, 802 (Fla.S.Ct.1957).

It is our conclusion that the deeds from the Trustees of the Internal Improvement Fund did not convey to the

transportation company any right, title or interest to the submerged lands, and that their successors in title, the defendants herein, are not the owners thereof.

In view of our determination that the Trustees did not convey sovereignty lands in any of said grants, we see no reason to reach the question of estoppel.

It is therefore ordered that judgment with respect to said tracts be entered in accordance herewith.